CHIEF JUSTICE TURNAGE
concurs and dissents as follows.
¶46 I concur with the majority opinion as to Issues 1 and 2, but I dissent as to Issue 3.
¶47 In this action, Meyer brought suit against eighteen named and ten unnamed defendants for her alleged injuries from chemical exposure while she was employed at a beauty salon. The Case Management Order was made at the request of defendant Helene Curtis, Inc., as a means of allowing for the most expeditious and cost-effective way of proceeding through the preliminary stages of this potentially very complicated lawsuit. The order stated that it was designed to manage identification of Meyer’s claims regarding exposure and causation.
¶48 The Case Management Order required Meyer to file and serve a statement identifying the chemicals in each of the products that she claimed to have harmed her. It further required
[a] statement from a physician stating his or her opinion, based on a reasonable degree of medical certainty, that the Plaintiff has suffered injuries as a direct and proximate result of exposure to those chemicals. The statement shall list all injuries, illnesses, or conditions suffered by the Plaintiff that, in the opinion of the physician, were caused by the alleged exposure, and whether each injury, illness or condition can be specifically linked to the chemical or chemicals believed to have caused the same.
As the majority has stated, the Case Management Order was based on one used in Schelske. As the majority has also stated, the essence of the order was to require Meyer to establish three elements: product *61 identification, use and exposure, and causation linking the product defect to an identifiable injury.
¶49 In response to the Case Management Order, Meyer filed and served two affidavits, one by herself and the second by Dr. Gunnar Heuser. In her affidavit, Meyer addressed the product identification and use and exposure requirements of the Case Management Order. In his affidavit, Dr. Heuser listed seven chemical injuries to Valery Meyer as found by him and other doctors in “a comprehensive evaluation for her multi system complaints” and also “independently diagnosed by Dr. Jack Thrasher in his report dated December 12,1995, in which I concur.” Dr. Heuser further stated:
[I]t is my expert opinion that the above chemical injuries, one through seven, suffered by Valery Meyer were directly and proximately caused by her use and exposure to those hazardous toxic chemicals that have been identified by Dr. Thrasher, in his attached reports to Mr. Scanlon, while she was employed as a beautician at the J.C. Penneys beauty salon in Helena, Montana.
While Dr. Heuser’s affidavit identifies the seven specific chemical injuries to Meyer, its answer to the requirement concerning a physician’s statement of causation is problematical.
¶50 Attached to Dr. Heuser’s affidavit are 78 pages attributed in part to Jack Thrasher, who is described on his letterhead as a “medical/legal consultant,” and who was identified in Schelske as a Ph.D. toxicologist. Among those pages, fourteen separate lists (authorship not indicated) show the names of products manufactured by the fourteen cosmetic manufacturer and marketer defendants. Across from the names of most products in each of those lists, under the caption “Chemical Injury,” is listed one or more numbers between 1 and 7. Those numbers apparently correspond to the numbers in the list of chemical injuries to Meyer as set forth in Heuser’s affidavit. The remainder of the 78 pages consist of copies of letters from Thrasher to Meyer’s attorney, describing possible adverse health effects of various chemicals in each of the products listed.
¶51 One basis for the Court’s rejection of the affidavits in Schelske was that the list of chemicals and associated diseases therein was “merely a collection of potential consequences from contact with the chemicals in the products” which did not describe the particular injuries suffered by the plaintiff. Schelske, 280 Mont. at 485, 933 P.2d at 804. Another basis for the Court’s rejection was that the doctor’s affidavit was vague and conclusory without providing the specific causa *62 tion linking the product defect to an identifiable injury. Schelske, 280 Mont. at 486, 933 P.2d at 804-05.
¶52 Comparing the Schelske affidavits to those in the present case, the “improvements” in the affidavits in the present case are that Meyer has submitted her own affidavit which lists, by defendant, each product which she has identified as having caused her injuries and, in summary fashion such as “all day every day”and either “inhalation ” or “dermal,” describes the time period involved and circumstances of her exposure.
¶53 What is not different from the affidavits in Schelske is that Thrasher’s letters are merely a list of a myriad of possible consequences from contact with various chemicals and are not tied to Meyer or to her particular injuries. Other than the choice of products named (of which there are well over two hundred), none of the information — for example, the necessary level of exposure believed to lead to the listed health effects — is correlated with Meyer’s experience. Moreover, Thrasher’s letters are only preliminary in nature, in that they include various requests by him for more information from Meyer’s attorney, such as requests for information about the percentage concentrations of chemicals in various of the products and, as to some of the products, requests for identification of the specific chemicals present. As a result of his lack of complete information, Thrasher was unable to list possible consequences from contact with at least fifty of the listed products.
¶54 A third point concerning Thrasher’s letters is that many of the adverse health effects listed — such as cancer, enlarged liver, skin burns, clonic convulsions, anorexia, and pulmonary edema — are problems from which Meyer has not alleged that she suffers. Finally, Thrasher makes statements not based upon medical or scientific knowledge — e.g., in providing support for his statement that fragrances may cause irritation to mucous membranes, Thrasher states “[f]or now, until specifics are known, the reference on fragrances would have to be personal knowledge based upon experience in a litigation involving fragrances.”
¶55 As the majority points out, in rejecting Dr. Heuser’s affidavit, the District Court reasoned that the affidavit failed to explain which chemical or chemicals were alleged to have caused which injuries and also failed to explain the scientific basis for Dr. Heuser’s conclusion that Meyer’s injuries were caused by a particular chemical or chemicals. Even though Dr. Heuser states that in his expert opinion Meyer’s *63 chemical injuries were “caused by her use and exposure to those hazardous toxic chemicals that have been identified by Dr. Thrasher,” the nature of Thrasher’s letters, the basis for that opinion on causation, results in a causation link which, as in Schelske, is unacceptably vague and conclusory. Dr. Heuser’s affidavit, in its entirety, simply does not answer the question of whether each injury, illness or condition can be specifically linked to the chemical or chemicals believed to have caused the same. I would conclude that the affidavits here cannot fairly be said to meet the District Court’s Case Management Order. I would therefore affirm the summary judgment order entered by the District Court.
JUSTICE GRAY and JUSTICE NELSON join in the foregoing concurring and dissenting opinion of CHIEF JUSTICE TURNAGE.